### CASE NO.  22-5465
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**MICHELLE MCMILLEN, Individually and as Administrator of the Estate of Gynnya McMillen - PLAINTIFF-APPELLEE**

**v.**

**REGINALD WINDHAM, Individually and in his official capacity as Youth Worker Supervisor for Lincoln Village Regional Juvenile Detention Center - DEFENDANT**

**and**

**MICHAEL PRICE, Individually and in his official capacity as Assistant Superintendent for Lincoln Village Regional Juvenile Detention Center DEFENDANT- APPELLANT**

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF KENTUCKY AT FRANKFORT
### CIVIL ACTION NO. 3:16-cv-558
### HONORABLE REBECCA GRADY JENNINGS,
### DISTRICT JUDGE, PRESIDING

### BRIEF OF DEFENDANT-APPELLANT MICHAEL PRICE

Edward A. Baylous II
Justice and Public Safety Cabinet
125 Holmes Street, 2nd Floor
Frankfort, KY 40601
Telephone:  502-564-8231
edward.baylous@ky.gov
*Counsel for Defendant-Appellant*

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................3

STATEMENT AS TO ORAL ARGUMENT...........................................4

RULE 26.1 DISCLOSURE STATEMENT..............................................4

STATEMENT OF THE JURISDICTION................................................5

STATEMENT OF THE ISSUES.............................................................5

STATEMENT OF THE CASE .................................................................5

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ........................................................................................12

     STANDARD OF REVIEW .........................................................12

     ANALYSIS...................................................................................13

CONCLUSION .....................................................................................19

CERTIFICATE OF COMPLIANCE.....................................................21

CERTIFICATE OF SERVICE ..............................................................22

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 215 (Ky. App. 2009) ........................ 12

*Gray v. General Motors Corp.*, 133 F. Supp. 2d 530 (E.D. Ky. 2001), *aff'd,* 312 F.3d 240 (6th Cir. 2002). .......................................................................................... 17

*Haney v. Monsky*, 311 S.W.3d 235 (Ky. 2010), *as corrected* (May 7, 2010). ........ 13

*Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014). .................................................. 13

*Patton v. Bickford*, 529 S.W.3d 717 (Ky. 2016) ....................................................... 19

*Peterson v. Foley*, 559 S.W.3d 346 (Ky. 2018) ........................................................ 18

*Ritchie v. Turner,* 559 S.W.3d 822 (Ky. 2018) ......................................................... 13

*Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006), *as corrected* (Sept. 26, 2006). ......................................................................................................................... 15

*Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011). ......................................... 11

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). ................................................... 12

## STATEMENT AS TO ORAL ARGUMENT

Oral argument will significantly assist the court in understanding the facts or arguments presented in the parties' briefs.

## RULE 26.1 DISCLOSURE STATEMENT

Michael Price is appealing in his individual capacity and a disclosure statement is not required under Federal Rule of Appellate Procedure 26.1

5

**STATEMENT OF JURISDICTION**

This is an interlocutory appeal of the denial of judgment as a matter of law
under Federal Rule of Civil Procedure Rule 50 based on qualified immunity.  28
U.S.C. §1291 and *DiLuzio v. Village of Yorkville, Ohio*, 796 F.3d 604, 609 (6th
Cir. 2015).

**STATEMENT OF ISSUES**

The issue in this appeal is whether the trial court erred by not granting Michael
Price's motion for judgment as a matter of law on the sole remaining claim against
his because entitled to official qualified immunity.

**STATEMENT OF THE CASE**

On January 11, 2016, Gynnya McMillen suffered a fatal cardiac arrythmia
due to an undiagnosed genetic condition while in custody of the Kentucky
Department of Juvenile Justice (DJJ) at the Lincoln Village Regional Juvenile
Detention Center (Lincoln Village).[1]  The cause of her death was a mystery until
testing by the Mayo Clinic, made at the request of the Office of the Chief Medical
Examiner as part of its post-mortem investigation to the cause of death, revealed that

---

[1] Complaint at ¶43, DE 1 at PageID# 17.

6

Gynnya McMillen had a genetic mutation associated with Long QT Syndrome.[2]

Michelle McMillen, the Appellee and personal representative the Estate of Gynnya McMillen (Estate), is the mother of Gynnya McMillen.  In the early morning hours of January 11, 2016, Ms. McMillen and Gynnya were involved in an altercation that resulted in Gynnya being arrested.[3]  Following a hearing, the district court of Shelby County, Kentucky, ordered Gynnya be held at the Lincoln Village until further proceedings on the following Monday.[4]

There are few issues of fact as to what occurred in Lincoln Village because the entirety of Gynnya's stay, except for the time she was in the shower was video recorded.  Upon admittance to Lincoln Village, the staff conducts a frisk search of all juveniles.[5]  This is a practice at all juvenile detention centers operated by the DJJ.[6]  Upon entry, a juvenile is instructed to remove any outerwear in preparation of being searched to facilitate the frisk search and to allow any outerwear to be searched separately.[7]  Gynnya refused to comply when directed to remove her "hoodie" or to

---

[2] Complaint at ¶44, RE 1 at PageID# 17.
[3] Complaint at ¶27, RE 1 at PageID# 13.
[4] Complaint at ¶25, RE 1 at PageID# 13.
[5] Testimony of Ed Jewell, RE 281 at PageID# 4350 and Defendants' Exhibit 207.
[6] Id. At PageID# 4351.
[7] Testimony of Victor Holt, RE 284 at PageID# 4496 to 4523.  Also Exhibit 7 and 7A introduced at PageID #4504.

cooperate with the frisk search.[8]  Victor Holt, the supervisor on duty at the time, called Michael Price to inform him of the situation.[9]  Price told Holt that the search was mandatory.[10]  The staff spent approximately ten (10) minutes, both before and after the call to Price, trying to persuade Gynnya to remove her "hoodie" and comply with the search.[11]

She continued to refuse to comply with directions or even verbally acknowledge the direction.[12] Eventually, the staff restrained Gynnya using approved Aikido Control Techniques to secure Gynnya.[13]  When Loretta Gaudern commenced frisking her, Gynnya began kicking Ms. Gaudern and other staff.[14] Gynnya was forced to the floor where the search was completed.[15]  She was then brought to her feet and escorted to an isolation cell while being restrained.[16]

The cell housing Gynnya was an observation cell with a video camera, thus, Gynnya's entire confinement in the cell was recorded.[17]  The camera records video

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id..*
[17] Testimony of Lashae Newby, RE 285 at PageId# 4700

only, as do all the cameras at Lincoln Village.[18]  The camera is monitored from the control room rather than the desk where Windham was sitting.[19]  The first sign of medical distress to Windham was a what he perceived to be a cough at approximately 11:39 p.m., which is approximately eighteen hours after she arrived.[20] At the time of the gasp/cough, Mr. Windham was sitting at a desk in the Lincoln Village intake area where Gynnya's cell was located.[21]  Mr. Windham did not have access to the camera feed from Gynnya's cell.  To investigate the unusual sound, Mr. Windham went to the door of her cell and observed her for approximately eighteen second.[22]  While observing Gynnya, he saw her move and he did not detect any sign of distress.[23]  What he did not know was that Gynnya had entered a ventricular fibrillation that resulted in her being beyond resuscitation within five minutes.

Gynnya was found dead in her cell the following morning.  The unexpected and unexplained death of a sixteen-year-old prompted the Justice and Public Safety Cabinet (Justice Cabinet) to send and Ed Jewell, an investigator in the Internal Investigation Branch of the Justice Cabinet, to discover the facts and circumstances

---

[18] *Id*. at PageId# 4758-59
[19] *Id.*
[20] Testimony of Reginald Windham, RE 285 at PageIS# 4821 through 4833.
[21] *Id.*
[22] *Id.*
[23] *Id.*

surrounding her death.[24]    Mr. Jewell's, investigation was very thorough and

universally commended by all parties to this action.[25]    The most disturbing finding

of Mr. Jewell's investigation was the staff at Lincoln Village had not been

performing or properly documenting observations of Gynnya as required by the

Standard Operating Procedures and DJJ regulations.    Mr. Jewell substantiated

improper supervision against a number of the staff who had failed to conduct

observations and had falsified records relating to observations.    Staff members who

failed to perform observations and falsified observation records were disciplined,

including Reginald Windham who was terminated for falsifying observation logs

both before and after Gynnya's death.

   Michael Price, the Appellant, was the deputy superintendent of Lincoln

Village at the time of Gynnya death.    His direct supervisor was Michelle Grady, the

superintendent.[26]    Among those under his supervision was Brent Kimbler, the youth

services program supervisor.[27]    Mr. Kimbler supervised the youth worker

supervisors at staff at Lincoln Village who worked in three shifts to operate the

---

[24] Testimony of Ed Jewell, RE 281 at PageID# 4286 and Plaintiffs' Exhibit 13.
[25] Testimony of David Roush, RE 276 at PageID# 4187.
[26] Testimony of Brent Kimbler, RE 285 at PageID# 4723.
[27] *Id.*

facility on a round-the-clock basis.[28]

The Estate of Gynnya McMillen and Michelle McMillen filed this action against Michael Price and other employees of the Kentucky Department of Juvenile Justice alleging claims for violation of Gynnya's rights of under 42 U.S.C. §1983, negligence, negligence *per se*, negligent retention and supervision, and a variety of intentional torts related to Gynnya restraint and search. After dispositive motions, a trial was held for thew remaining claims against Price and other remaining defendants.

Price moved for judgment as a matter of law under Rule 50 at the close of the Estate's case, which was denied by the trial court. The court held that Price's actions related to training of Windham was a discretionary function but that there was evidence for the jury to find that Price had performed the discretionary function in bad faith.[29] The trial court, however, did not instruct the jury on the issue of bad faith and the Estate did not object. The jury returned a partial verdict in favor of Michael Price on claims a §1983 claim related to supervision of the staff at Lincoln Village, negligence, gross negligence and a judgment was entered in his favor.[30] The

---

[28] *Id.*
[29] RE 287 at PageID# 5085- 87
[30] RE 272.

jury was unable to reach a verdict as to the claim of negligent retention and supervision under state law on the sole issue of whether Price was negligent in his supervision.[31]  The motion under Rule 50 was renewed after the jury had returned its verdict.[32]  The trial court against denied the motion and this appeal followed.[33]

## SUMMARY OF ARGUMENT

Michael Price is entitled to judgment as a matter of law because 1) he was carrying out a discretionary function as deputy superintendent acting in good faith; and 2) the jury finding that he did not implicitly authorized, approved, or knowingly acquiesced in any conduct by a subordinate that violated Gynnya's constitutional rights forecloses any finding of bad faith.

## ARGUMENT

### A. Standard of Review

The sole claim is one for negligence hiring/supervision under Kentucky law. When a motion under judgment as a matter of law under Federal Rule of Civil Procedure 50, the state law standard of review applies.[34]  Under Kentucky Law:

> When a directed verdict is appealed, the standard of
> review on appeal consists of two prongs. The prongs are:

---

[31] *Id.*
[32] RE 268.
[33] RE 273.
[34] *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 (6th Cir. 2011).

"a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." "A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made." [35]

B. Analysis

An official of the Commonwealth of Kentucky can be held liable for negligently performing ministerial act. A ministerial act is defined by case law as "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."[36] Official, however, have qualified official immunity for discretionary act that are performed in good faith. According to case law, discretionary acts are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment."[37] Defining ministerial versus discretionary acts has proven easier than applying the definitions:

> The distinction between ministerial and discretionary, of course, is where courts and litigants seem to have the most trouble. The decision "rests not on the status or title of the officer or employee,

---

[35] *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 215 (Ky. App. 2009)(internal citations omitted).
[36] *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).
[37] *Id.*

> but on the function performed." Indeed, most
> "immunity issues are resolved by examining 'the nature
> of the functions with which a particular official or class
> of officials has been lawfully entrusted.'"[38]

The difficulty is compounded by the fact that "[i]n reality, few acts are ever purely discretionary or purely ministerial."[39] Proper analysis "looks for the *dominant* nature of the act. [40]

It is not unusual for policies to have both a ministerial and a discretionary component. The Kentucky Supreme Court found that KRS 620.030(1) presented such a situation in *Ritchie v. Turner*.[41] KRS 620.030(1) imposes a duty to report on "Any person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused….[42] The plaintiff in *Ritchie* sued school official who did not have direct knowledge of the sexual misconduct of a teacher on the theory that their failure to report, as required by KRS 620.030, cause harm to their child. The Kentucky Supreme Court held that KRS 620.030 had both a discretionary and a ministerial element depending on the facts:

> In cases such as this where the alleged abuse was not
> actually observed by the officials who allegedly failed
> to report, KRS

---

[38] *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014).

[39] *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010), *as corrected* (May 7, 2010).

[40] *Id.*

[41] 559 S.W.3d 822 (Ky. 2018).

[42] *Id*. at 835 (quoting KRS 620.030).

620.030 first requires a baseline determination — is there "reasonable cause" to believe abuse has occurred or is occurring? To make that decision, the official must do some investigation after a potential issue of abuse is brought to his or her attention; the requirement to investigate, to ascertain the facts, is plainly a ministerial function. Assessing the information gathered from the investigation and making the actual determination of whether reasonable cause exists to believe abuse is occurring or has occurred, on the other hand, requires personal judgment, a discretionary function. Consequently, under the statute, no further action is required when one investigates and concludes there is no reasonable cause to believe that a child is being or has been abused. However, when one investigates and concludes reasonable cause exists, the report to a proper authority pursuant to KRS 620.030 is mandatory. The dominant act in cases where the alleged abuse is not actually observed (or otherwise known with reasonable certainty) and an investigation is required to determine reasonable cause is discretionary.[14]

Analysis qualified immunity requires determinizing the specific conduct to which the analysis is applied.

In all instances, however, there must be a causally related "violation of a constitutional, statutory, or other clearly established right" of the complainant. *Id.* It is these causally related violations or acts which are measured against the standards of discretionary or ministerial duties, not the distant myriad acts or omissions that one could logically construct to have preceded them. "[I]f one retreats far enough from a ... violation[, a distant act or omission] can be identified behind almost any such harm

15

inflicted .... At the very least there must be an affirmative link between [the act or omission] and the ... violation alleged."[43]

Thus, as with an analysis of the negligence, the analysis of immunity requires focus on the alleged act that caused the injury.

"Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith."  Thus, the proof required necessarily focuses on "bad faith," rather than "good faith."[44]  "There must be some implication of self-interest, or a deliberate indifference, or sinister motive, rather than an honest mistake or oversight."[45]  Thus, to overcome qualified official immunity under Kentucky law for discretionary acts, there must be a showing of something more that simple negligent.

1. **Michael Price could not act in bad faith by failing to terminate Reginald Windham because had no authority to terminate or discipline any employee of the DJJ.**

---

[43] *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006), *as corrected* (Sept. 26, 2006).
[44] *Id*. at 481.
[45] *Id.* at 485.

Part of the claim against Michael Price for negligent supervision is set forth in Paragraph 139 of the Complaint:

> That in view of their disciplinary histories Defendant[] Windham, … should not have been retained as employees of Lincoln Village as of January 10, 2016. Defendant Windham therefore should not have been employed and present to watch Gynnya gasp and convulse on her way to death at 11:39pm on Sunday, and if a more caring, properly trained and properly supervised employee had been present he or she would have intervened and most likely saved Gynnya's life.

No evidence was presented regarding what role Michael Price played, if any, in the prior discipline for Windham, Blann, or Holt.   What is clear is that Price, at most, could make a request for discipline and make a recommendation. There is no evidence in the record that Price played any part in the prior discipline.  Other than the existence of prior discipline, there is no evidence that Price acted in bad faith is he was even asked for a recommendation on the prior discipline.  The final decision as to whether any discipline would be imposed, and the appropriate level was decided far above Price's level.  In fact, Michelle Grady, Price's direct supervisor, did not have authority to terminate or discipline employees.   No evidence was presented that Windham would have been terminated if Price had recommended termination for prior disciplinary matters.

Under Kentucky law,

17

> [w]hile reasonable inferences are permissible, a jury
> verdict must be based on something other
> than speculation, supposition, or surmise. The type of
> evidence that will support a reasonable inference must
> indicate the probable as distinguished from a possible
> cause. There must be sufficient proof to tilt the balance
> from possibility to probability.... Thus, defendants
> invariably receive a judgment in their favor as a matter of
> law in Kentucky where plaintiffs are unable to isolate one
> cause, either by direct evidence, or, more relevant to the
> present case, by eliminating other possible causes.[46]

The uncontroverted evidence is that Price had no authority to unilaterally

terminate or otherwise discipline anyone.[47]   The most that he could do was

request discipline.[48]   Whether making such a request would have ultimately

resulted in the termination of Windham is a matter of pure speculation.  It would

be impossible, under the evidence presented, for a jury to conclude that any

disciplinary recommendation regarding prior misconduct by Windham, because

there is no evidence of his participation in determining prior discipline.

2.  **Michael Price did not act in bad faith regarding his training and
    supervision of Reginald Windham to enter and assess Gynnya
    McMillen.**

---

[46] *Gray v. General Motors Corp.*, 133 F. Supp. 2d 530, 534 (E.D. Ky.
2001), *aff'd,* 312 F.3d 240 (6th Cir. 2002).
[47] Trial Testimony of Michael Price, RE 286 at PageID# 4920.
[48] *Id.*

The alleged conduct demonstrating negligent training and supervision is explained in greater detail in Paragraph 124 of the Complaint. Specifically, the Estate alleges that Reginald Windham should have entered Gynnya McMillen's cell to assess and resuscitate her. Thus, the analysis needs to focus on training and supervision related to Mr. Windham's failure to enter the Gynnya cell to assess and resuscitate her.

The trial court, however focused on the issue of missed or falsified bed checks, all of which occurred while Gynnya was either in no medical distress or already deceased. Except for a brief period beginning at around 11:39 pm., Gynnya was in no medical distress. Had the missed bed checks been performed, they would have found Gynnya in apparent good heath or, sadly, already deceased, thus the failure to perform bed checks was not the cause of her death.

The Kentucky Supreme court dealt with a similar situation in *Peterson v. Foley*.[49] Deputy jailers had failed to perform periodic checks on an inmate. The court held that there was a fundamental problem in proving causation because it was unknown when the inmate had died. Simply missing checks, any need for intervention or after the inmate was deceased made it impossible to prove the

---

[49] 559 S.W.3d 346 (Ky. 2018).

individual who missed the check at the critical time. In this case, the situation is the exact opposite. The precise time Gynnya entered medical distress and when resuscitation was no longer possible. During that time, Reginald Windham performed a check on Gynnya but did not detect any distress. Therefore, missed bed checks were not the cause of her death. The cause was Windham's failure to detect distress when he performed the bed check.

This is rooted in what constitutes "casuation" for the purposes to determine liability. In Kentucky, "[a]n act or omission is not regarded as a cause of an event if the particular event would have occurred without it."[50] Even if all of the other bed checks were performed, it would not have changed Windham's evaluation of the situation at the crucial moment. Price was acting in bad faith for reasons explained below, but even if he had acted in bad faith in enforcing bed check policy, the results would have been the same. There is no evidence of bad faith as to Windham's failure to recognize Gynnya's medical distress, thus, he is protected from suit by qualified official immunity.

**3. The jury verdict in Michael Price's favor on Count II because bad faith under Kentucky law is identical to deliberate indifference under federal law.**

---

50 *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016)(citing *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176–177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

The jury instructions did not present the question of whether Michal Price acted in bad faith in his supervision of Reginald Windham and the staff at Lincoln Village.[51]   It did, however, ask the jury whether Price violated Gynnya's rights through deliberate indifference under Count 3 whether Price implicitly authorized, approved, or knowingly acquiesced in any conduct by a subordinate that violated Gynnya's constitutional rights.[52]  The jury unanimously found that he did not.  Such a finding forecloses any conduct that could be taken as bad faith under Kentucky law.

## **CONCLUSION**

Michael Price carried out his discretionary function as deputy superintendent of Lincoln Village in good faith.  Therefore, he is entitled to judgment as a matter of law based on qualified official immunity under Kentucky law.

> */s/* Edward A. Baylous II
> Edward A. Baylous II
> JUSTICE AND PUBLIC SAFETY
> CABINET
> 125 Holmes Street, 2nd Floor
> Frankfort, Kentucky 40601
> Telephone: (502) 564-8231
> *Attorney for Defendants- Appellants*

---

[51] RE 260 at PageID# 4055
[52] *Id.* at PageID# 4047.

21

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 16 pages and 3365 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: August 31, 2022

> */s/* Edward A. Baylous II
> Edward A. Baylous II
> JUSTICE AND PUBLIC SAFETY
> CABINET
> 125 Holmes Street, 2nd Floor
> Frankfort, Kentucky 40601
> Telephone:  (502) 564-8231
> *Attorney for Defendants- Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2022, I filed the Appellants' Brief via the

ECF system which served a copy on counsel of record.


/s/ Edward A. Baylous II
Edward A. Baylous II
JUSTICE AND PUBLIC SAFETY
CABINET
125 Holmes Street, 2nd Floor
Frankfort, Kentucky 40601
Telephone:  (502) 564-8231
*Attorney for Defendants- Appellants*

23

RULE 30(G)(1) ADDENDUM
DESIGNATING RELEVANT DOCKET ENTRIES

| Description | Docket Entry | Page ID # Range |
|---|---|---|
| Complaint | RE 1 | 1 through 187 |
| Jury Instructions | RE 260 | 4055 through 4068 |
| Verdict Form | RE 261 | 4069 through 4079 |
| Renewed Rule 50 Motion | RE 268 | 4117 through 4122 |
| Order Denying Renewed Rule 50 Motion | RE 273 | 4142 through 4149 |
| Trial Testimoiny of David Roush | RE 276 | 4154 through 4212 |
| Trial Testimony of Ed Jewell | RE 281 | 4247 through 4370 |
| Trial Tesitimony of Victor Holt | RE 284 | 4468 through 4619 |
| Trial Testimony of Lashae Newby | RE 285 | 4698 through 4722 |
| Trial Testimony of Reginald Windham | RE 285 | 4811 through 4875 |
| Trial Testimony of Brent Kimbler | RE 285 | 4723 through 4774 |
| Ruling from the Bench on Michael Price's Rule 50 Motion | RE 287 | 5085 through 5097 |
|  |  |  |
|  |  |  |